### EIGHTH WARD BANK OF BROOKLYN v. EHRLICH et al.

(Supreme Court, Appellate Division, Second Department. March 2, 1906.)

1. EVIDENCE—SUFFICIENCY TO SUPPORT VERDICT.
   Where an accommodation note executed by defendant was discounted by plaintiff bank for the benefit of J., and the amount due thereon at the time of the trial was $2,801, while the only credit defendant was entitled to because of the sale of pledged securities was not greater than $2,719.20, defendant's counsel having conceded that plaintiff was entitled to recover $100, a verdict for defendant was erroneous.

2. BILLS AND NOTES—EVIDENCE—QUESTION FOR JURY.
   In an action on an accommodation note discounted by plaintiff for the benefit of J., evidence held insufficient to warrant submission to the jury of the question whether plaintiff held a certain deed executed by J. as a specific security for the note sued on.

Appeal from Trial Term, Kings County.

Action by the Eighth Ward Bank of Brooklyn against Etta Ehrlich and another. From a judgment in favor of defendants, and from an order denying plaintiff's motion for a new trial, it appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

William J. Carr, for appellant.
Thomas Abbott McKennell, for respondents.

RICH, J. This action was brought to recover upon a promissory note made by the defendant Etta Ehrlich, indorsed by Albert A. Ehrlich, and by him delivered to the plaintiff for value before maturity. The defendant Etta Ehrlich alleges that she was an accommodation maker, having executed the note in suit as a renewal of several preceding notes, the first of which was given to renew a note held by plaintiff, made by one Celia Ehrlich, indorsed by the defendant Albert A. Ehrlich, and discounted by plaintiff; that the note in suit and all preceding notes were executed by her solely for the accommodation of her codefendant, without consideration; that plaintiff had knowledge of this fact, and also that, at the time she executed the first note, the

plaintiff received from one Johnson, for whose accommodation the Celia Ehrlich's note was given, securities exceeding in value the amount due upon the note in suit; yet these securities have been disposed of by plaintiff, who has refused to apply the same, or the avails thereof, to the payment of the note in suit. At the close of the evidence a verdict was directed against the defendant Albert A. Ehrlich, and the case submitted to the jury as to the defendant Etta Ehrlich. Two questions of fact were submitted, as follows: First, whether the security was given to the bank by Johnson as a specific security for the first note executed by the defendant Etta Ehrlich; and, if so, second, whether the plaintiff had converted the security to its own use.

We think the plaintiff was entitled to a verdict against the defendant Etta Ehrlich in some amount. Her counsel conceded that plaintiff was entitled to recover $100, and yet a verdict was returned in her favor and against the plaintiff. There was due and unpaid on the note on the day of the trial $2,801, and the defendant Etta Ehrlich was not entitled, under any circumstances, to a greater credit than $2,719.20. The verdict, therefore, was clearly erroneous, and plaintiff's motion for a new trial ought to have been granted.

There is another reason why this judgment cannot stand. The evidence was not sufficient, in our opinion, to warrant the submission to the jury of the question whether the plaintiff held the deed of May 28th as a specific security for the note in suit. Upon the theory of the case adopted by the trial justice, the defendant Etta Ehrlich, conceding her to have been an accommodation maker, established no defense to the note in suit. May 8, 1900, Johnson was indebted to the plaintiff on notes made and indorsed by him to the extent of several thousand dollars, and had therefore given the bank several securities as collateral to such indebtedness. He was not indebted or liable to the bank on the Ehrlich note. This note was made payable to the order of the defendant Albert A. Ehrlich, who had procured it to be discounted by plaintiff, and had loaned the avails to Johnson, who had given his note for the amount of such loan to Albert A. Ehrlich. This latter note was never in plaintiff's possession. On the day the Ehrlich note matured, Albert, who did not wish to renew it, went to the bank in company with Johnson. Ehrlich testified that he there said to plaintiff's cashier:

"Here is Mr. Johnson. He wants to straighten out this note. Mr. Johnson is perfectly willing to give you security for the renewal note. I don't want to renew the note, but if you will accept the security, I will go on the note. Mr. Johnson previous to this said: 'You have security in the bank enough to cover this note, but I will give you additional security, because I want Ehrlich to renew this note.' * * * Mr. Johnson said the money was got for his benefit. * * * It was accommodation, and he wanted Mr. Brown to renew the note, because he had the benefit of the money, and if he didn't have enough security, he would give him additional. * * * With reference to anything further to be given, Mr. Johnson said if he finds later he was not satisfied—He says that they had enough security, but would still give him further collateral—anything. He would call upon him."

Johnson, speaking of this interview with the cashier, says:

"I told him he had plenty of security there for any of my indebtedness, and that I would like * * * to have him renew it, and wanted it fixed up. He had a great deal of my property, and if he wanted any more I would give it to him. I could not pay the note then. * * * I persuaded Mr. Brown to

renew the note. I think I offered him some deeds—one ·deed, one or two—at. that time, and told him if he wanted anything else I would give it to him any time he wanted it; he could have anything or all I had."

This conversation is denied by plaintiff's cashier so far as it relates. to any security given or to be given for the Ehrlich note. It appears that at the time of his conversation with the cashier Johnson supposed that the note he had given to Ehrlich had been discounted by the bank. The bank was procuring all the collateral it could on his general indebtedness, because of the fear entertained of his inability to pay, which seems to have been justified, as he went into bankruptcy May 28th following. A brother of the defendant Albert testified that in the early part of May, before the 15th, he had a conversation with plaintiff's cashier, Brown, in which the latter told him that his 'brother and Johnson had been down there, and fixed up their notes; that Johnson had left some security there, and had promised him more, and he thought it would be well to have more, and asked the witness to get the security of Johnson which he had promised. Witness then testified:

"I called on Mr. Johnson. I afterwards went back to Mr. Brown. I brought him two deeds—two papers. I had received those papers from Mr. Johnson a day or two before he made the assignment. * * * I took them down to Mr. Brown."

On the day the proper "deed" was executed, Johnson delivered his promissory note to this witness, who discounted it with plaintiff. It does not appear from the evidence of this witness that the security received from Johnson was for specific security for defendants' note; neither does his evidence show that he even made a request of Johnson for such security, or that he said anything to Johnson upon that subject, and the deed itself is silent as to the purpose for which it was given. Plaintiff's cashier testified that he never received any security for the specific note in suit. Not only is there no evidence warranting the conclusion that the deed was given to secure the Ehrlich note alone, but it all points to the conclusion that the deed was given by Johnson to secure all of his indebtedness to plaintiff.·

The judgment and order must therefore be reversed, and a new trial granted; costs to abide the event. All concur.